**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| MOHAMED AL SERAJI<br><br>Plaintiff,<br><br>vs.<br><br>CHAD F. WOLF, et al.<br><br>Defendants. | Case No.: 1:19-CV-02839 (RBW)<br><br>The Honorable Reggie B. Walton |
|---|---|

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NICHOLAS VICENCIA'S MOTION TO DISMISS**

Dated: March 18, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch
Civil Division

*/s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendant Vicencia

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. This Court lacks personal jurisdiction over SA Vicencia. ..... 1

II. The Section 1981 claim is barred by the statute of limitations. ..... 4

III. The Section 1981 is barred by claim preclusion. ..... 7

IV. Section 1981 does not provide a damages remedy against federal actors and does not remedy national origin discrimination. ..... 9

V. SA Vicencia is entitled to qualified immunity on the Section 1981 claim. ..... 11

VI. Amendment would be futile. ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## Federal Cases

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ........ 1

**Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 10

**AMTRAK v. Morgan*,
536 U.S. 101 (2002) ........ 7

**Apotex, Inc. v. FDA*,
393 F.3d 210 (D.C. Cir. 2004) ........ 8

*Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*,
297 F. Supp.2d 165 (D.D.C. 2003) ........ 11

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........ 12

**Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12, 13

*Balser v. DOJ*,
327 F.3d 903 (9th Cir. 2003) ........ 2

*Barbour v. Merrill*,
48 F.3d 1270 (D.C. Cir. 1995) ........ 10

*Bray v. RHT, Inc.*,
748 F. Supp. 3 (D.D.C. 1990) ........ 12

*Cal. Cmtys. Against Toxics v. EPA*,
928 F.3d 1041 (D.C. Cir. 2019) ........ 8

*Carney v. Am. Univ.*,
151 F.3d 1090 (D.C. Cir. 1998) ........ 5

*Chardon v. Fernandez*,
454 U.S. 6 (1981) ........ 7

*Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*,
922 F.3d 459 (D.C. Cir. 2019) ........ 6

*Dist. of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ........ 11

*Domino's Pizza, Inc. v. McDonald*,
546 U.S 470 (2006) ........ 5

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ........ 8

*Fiore v. Walden*,
688 F.3d 558 (9th Cir. 2012) ........ 4

*Get In Shape Franchise, Inc. v. TFL Fishers, LLC*,
167 F. Supp. 3d 173 (D. Mass. 2016) ........ 2

*Hardison v. Alexander*,
655 F.2d 1281 (D.C. Cir. 1981) ........ 8, 9

*I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*,
723 F.2d 944 (D.C. Cir. 1983) ........ 8

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989) ........ 10

*Johnson v. Ry. Exp. Agency, Inc.*,
421 U.S. 454 (1975) ........ 10

**Jones v. R.R. Donnelley & Sons Co.*,
541 U.S. 369 (2004) ........ 4

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
219 F. Supp. 2d 20 (D.D.C. 2002) ........ 10

*Kargbo v. AMTRAK*,
243 F. Supp.3d 6 (D.D.C. 2017) ........ 5

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........ 2

*Kornyo v. Gonzaga Coll. High Sch.*,
308 F. Supp. 3d 212 (D.D.C. 2018) ........ 7

*McKesson Corp. v. Islamic Republic of Iran*,
672 F.3d 1066 (D.C. Cir. 2012) ........ 10

*Novak v. World Bank*,
703 F.2d 1305 (D.C. Cir. 1983) ........ 8

*Oetiker v. Jurid Werke, GmbH*,
556 F.2d 1 (D.C. Cir. 1977) ........ 1

*Patterson v. McLean Credit Union*,
491 U.S. 164 (1989) ........ 4

*Saint Francis Coll. v. Al-Khazraji*,
481 U.S. 604 (1987) ........ 10

*Slate v. Public Defender Serv.*,
31 F. Supp.3d 277 (D.D.C. 2014) ........ 6

**Stafford v. Briggs*,
444 U.S. 527 (1980) ........ 2, 3

*Trifax Corp. v. Dist. of Columbia*,
53 F. Supp.2d 20 (D.D.C. 1999) ........ 12

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002) ........ 1

*Uzoukwu v. Metro. Wash. Council of Gov'ts*,
27 F. Supp.3d 62 (D.D.C. 2014) ........ 5

**Vasquez v. Whole Foods Mkt., Inc.*,
302 F. Supp.3d 36 (D.D.C. 2018) .................................................. 2

*Wag-Aero, Inc. v. United States*,
837 F. Supp. 1479 (E.D. Wisc. 1993) .................................................. 3

**Walden v. Fiore*,
571 U.S. 277 (2014) .................................................. 4

**Wallace v. Kato*,
549 U.S. 384 (2007) .................................................. 6

*Wilson v. Layne*,
526 U.S. 603 (1999) .................................................. 12

**Xia v. Tillerson*,
865 F.3d 643 (D.C. Cir. 2017) .................................................. 3, 9

**Federal Statutes**

28 U.S.C. § 1658 .................................................. 4

42 U.S.C. § 1981 .................................................. passim

42 U.S.C. § 1981(b) .................................................. 4

42 U.S.C. § 1983 .................................................. 10

U.S.C. § 1981(c) .................................................. 9

U.S.C. § 1983 .................................................. 10

**State Statutes**

D.C. Code § 12-301(8) .................................................. 5

**Other Authorities**

Federal Practice & Procedure § 1069.7 (4th ed. 2019) .................................................. 1

Federal Practice & Procedure § 4415 (4th ed. 2019) .................................................. 8

## INTRODUCTION

As relevant to this reply brief, the complaint here alleges a single claim (Count Four) under 42 U.S.C. § 1981 against Federal Bureau of Investigation Special Agent (SA) Nicholas Vicencia in his individual capacity. SA Vicencia moved to dismiss that sole count on multiple grounds. This Court lacks personal jurisdiction over SA Vicencia in his individual capacity. The Section 1981 claim is time-barred and claim-precluded. Section 1981 does not provide a damages remedy against federal actors, and certainly not on the facts alleged. And SA Vicencia is entitled to qualified immunity. Nothing Plaintiff states in his opposition compels a different result. This Court should not hesitate to grant SA Vicencia's motion to dismiss with prejudice.

## ARGUMENT

### I. This Court lacks personal jurisdiction over SA Vicencia.

"Plaintiff does not dispute that Defendant [Vicencia] is a resident of California and that the original events described herein took place in California." Opp., at 6-7. Plaintiff further agrees that under normal due-process principles, these facts conclusively demonstrate that this Court lacks personal jurisdiction over SA Vicencia. *Id.* at 7. Instead, Plaintiff hangs his hat on the so-called "pendent" personal jurisdiction doctrine. *Id.* That reliance is misplaced. Pendent personal jurisdiction is limited to situations where the court has personal jurisdiction over one claim against the defendant, and then exercises personal jurisdiction over any remaining claims *against the same defendant*. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002); *Oetiker v. Jurid Werke, GmbH*, 556 F.2d 1, 4-5 (D.C. Cir. 1977); *see also* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069.7 (4th ed. 2019) (doctrine applies to require "defendant *who is already before the court* to defend against all pending claims") (emphasis added). It is not a vehicle for asserting personal jurisdiction over additional parties where no such jurisdiction would

otherwise lie. *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 194 (D. Mass. 2016) ("The doctrine of pendent personal jurisdiction allows a court to exercise personal jurisdiction over additional claims against a single defendant, not over additional defendants.").

The main case cited by Plaintiff illustrates the point. In *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp.3d 36 (D.D.C. 2018), there were three defendants: (1) Whole Foods Market Group; (2) Whole Foods Market Services; and (3) Brooke Buchanan. The court ultimately concluded that it did not have personal jurisdiction over the first and third defendants, but did have jurisdiction over the second defendant. *Id.* at 48-53. It then relied on the pendent personal jurisdiction doctrine to exercise jurisdiction over all claims against the second defendant only. *Id.* at 48 n.2. It did *not* extend pendent personal jurisdiction over the first and third defendants. Instead, it dismissed them from the case. *Id.* at 48-52; *see also Get In Shape*, 167 F. Supp. 3d at 194-95 ("The doctrine is inapplicable here because [plaintiff] cites no case law that supports 'pendent personal jurisdiction' over additional defendants, as opposed to additional claims.").

Not only is that the black-letter general rule, it would be particularly inappropriate to extend pendent personal jurisdiction over federal officials sued in their individual capacities simply because the suit also involves official-capacity claims against other defendants. That is because an official-capacity claim against a federal official is really a claim against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Partovi v. Matuszewski*, No. 09-5334, 2010 U.S. App. LEXIS 18451, *2 (D.C. Cir. Sept. 2, 2010) ("Claims brought against government officials in their official capacity are generally treated as claims against the United States itself."); *Balser v. DOJ*, 327 F.3d 903, 907 (9th Cir. 2003) ("[A]ny lawsuit . . . against an officer of the United States in his or her official capacity is considered an action against the United States.") (citation omitted). Such claims can be brought in all 95 federal districts in all 50 states. *See Stafford*

*v. Briggs*, 444 U.S. 527, 544 (1980). Thus, to apply pendent personal jurisdiction in cases like this one would mean that the entire federal workforce is potentially subject to personal jurisdiction in their individual capacities in all 95 federal districts in all 50 states, so long as an official-capacity claim is also raised in the suit. The Supreme Court soundly rejected that argument in *Stafford*. *Id.* (although federal venue statute establishes nationwide jurisdiction for federal officers in their officials capacities, it does not confer personal jurisdiction over them in their individual capacities); *see also Juste v. United States DOJ*, No. 16-3335, 2017 U.S. Dist. LEXIS 37878, *5-6 (D.S.C. Feb. 23, 2017) ("A district court does not have nationwide jurisdiction over defendants who live outside the forum state simply because the defendants are federal government employees.") (citations omitted); *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1485 (E.D. Wisc. 1993) (applying *Stafford* and holding that "venue for a civil action brought against federal officials in their personal capacities is proper only where the claim arose or where all the defendants reside.") (citation omitted). To hold otherwise would eviscerate due process protections for federal employees sued in individual-capacity suits where their own personal assets are at stake. That is not the law.

Plaintiff bemoans the unfairness of having to litigate this case in two different courts. Opp., at 8. But nothing prevented him from filing this entire suit in the Central District of California, like he did previously and where all relevant events occurred. Perhaps Plaintiff filed in this District because dicta in the D.C. Circuit is arguably more favorable for him on Section 1981. *Compare Xia v. Tillerson*, 865 F.3d 643, 658-59 (D.C. Cir. 2017) (suggesting in dicta that Section 1981 might apply to federal actors) *with Wolde-Giorgis v. Symington*, No. 99-15860, 2000 U.S. App. LEXIS 12594, *3 (9th Cir. June 5, 2000) (adopting the view of every other Circuit to address the issue that "the plain language of 42 U.S.C. §§ 1981, 1983 does not permit actions against federal

employees acting under federal law"). If that is the case, this Court should reject this blatant attempt at forum shopping, particularly when it come at the cost of SA Valencia's constitutional right to due process with respect to the litigating forum.

In the end, Plaintiff has not cited a single case extending pendent personal jurisdiction against a federal official in his or her individual capacity simply because official-capacity claims are also asserted against other defendants in the case. *Stafford* precludes this Court from being the first. For these reasons, this Court should dismiss SA Vicencia from this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.[1]

## II. The Section 1981 claim is barred by the statute of limitations.

In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Court interpreted Section 1981 to exclude post-contractual, employment-based discrimination claims such as hostile work environment, wrongful termination, and failure-to-transfer claims. In 1991, Congress overturned *Patterson* by defining the key "make and enforce contracts" language in Section 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b). Thereafter, a question arose over which statute of limitations applied to the 1991 amendments. In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the Court answered that question. The Court held that for all Section 1981 claims that became actionable only because of the amendments, the federal four-year catchall statute of limitations found in 28 U.S.C. § 1658 governs. *Id.* at 382. With respect to Section 1981 claims actionable before the amendments, the forum state limitations period still governs. For such claims

[1] Plaintiff argues that because SA Vicencia is represented by government counsel located in D.C., there is no burden to defending in this forum. Opp., at 8. The Ninth Circuit made a similar argument in *Fiore v. Walden*, 688 F.3d 558, 584 (9th Cir. 2012), which exercised personal jurisdiction over a non-resident federal official sued in his individual capacity, finding that the burden of defending in the forum was low, in part, because the defendant was represented by Department of Justice lawyers. The Supreme Court reversed, holding that due process demands there still be some connection between the non-resident defendant and the forum state before a court can exercise jurisdiction over him in his individual capacity. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).

filed in this District, D.C.'s three-year statute of limitations for personal injury actions applies. *See Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998); D.C. Code § 12-301(8). In sum, "Section 1981 claims relating to contract *formation* are still governed by the appropriate state limitations period, but Section 1981 claims based on *post-contract formation* conduct are governed by the federal four-year limitations period." *Uzoukwu v. Metro. Wash. Council of Gov'ts*, 27 F. Supp.3d 62, 66 (D.D.C. 2014).

Plaintiff argues that the federal catchall statute applies to his Section 1981 claim. He is wrong. The key question is whether the alleged conduct relates to contract formation or post-contract formation. It is clear the challenged conduct here relates to the former. Indeed, Plaintiff never had a job with a private shipping company. He had a job *offer contingent upon* him obtaining a TWIC. He repeatedly refers to the arrangement as an offer, not a contract. Compl. ¶ 87 (the result was "the loss in Plaintiff's job offer"); ¶ 280 ("Defendant Vicencia further directly interfered with Plaintiffs pending offer of employment by intervening beyond the scope of his duties and making sure Plaintiff would not receive a TWIC card as required for his pending contingent job offer."). That is why when his TWIC application was denied, he was not fired. As alleged, he "was unable to accept the contingent job offer," and thus, unable to create a contractual relationship. *Id.* ¶ 47. Section 1981 has always been understood as providing relief "when racial discrimination blocks the creation of a contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Thus, courts have consistently held that Section 1981 claims related to an initial offer of employment must comply with the forum state limitations period. *See Kargbo v. AMTRAK*, 243 F. Supp.3d 6, 11 (D.D.C. 2017) (Section 1981 claim challenging non-selection for position governed by forum state limitations period); *Baynham v. Meridian Servs. Corp.*, No. 11-129, 2012 U.S. Dist. LEXIS 117916, *21 (S.D. Ind. Aug. 21, 2012) ("Any claim based on that initial offer

of employment . . . should have been brought within two years . . . ."); *Johnson-Harris v. AmQuip Cranes Rental, LLC*, No. 14-767, 2015 U.S. Dist. LEXIS 88736, *17 (E.D. Pa. July 8, 2015) ("[C]ourts have routinely held that failure-to-hire claims would have been actionable under the pre-1991 version of Section 1981.") (collecting additional cases). Thus, D.C.'s three-year statute of limitations governs Plaintiff's Section 1981 claim here.

Plaintiff alleges a single, discrete injury: his inability in December 2015 to accept an initial offer of employment after SA Vicencia allegedly told him he would not be receiving a TWIC for refusing to serve as an informant. His Section 1981 claim accrued on that date. *See Slate v. Public Defender Serv.*, 31 F. Supp.3d 277, 314 (D.D.C. 2014) (tortious interference with contractual relations accrues when through exercise of due diligence plaintiff could have learned about the interference). Plaintiff filed this complaint on September 24, 2019, well after the three-year limitations period had expired. His Section 1981 claim is untimely.

Plaintiff responds that even if D.C.'s three-year limitation period applies, his Section 1981 claim is still timely because "his harm did not cease for several more years." Opp., at 10-11. That turns accrual on its head. Accrual occurs when a plaintiff knows (or by exercise of due diligence should know) that an injury has *begun*, not that an injury has ceased. *See Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019). In fact, a claim still "accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (citation omitted). As the Supreme Court explained, "[w]ere it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.* That is not the law. Plaintiff appears to be relying on the continuing violation doctrine to argue that the time he spent trying to obtain a TWIC somehow tolls the statute of limitations. Opp., at 11. The Supreme

Court, however, has squarely rejected the argument that the continuing violation doctrine applies to claims involving discrete acts like the failure to hire. *See AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (for purposes of determining when statute of limitations begins to run, "the proper focus is on the time of the discriminatory act"); *Kornyo v. Gonzaga Coll. High Sch.*, 308 F. Supp. 3d 212 (D.D.C. 2018) (collecting additional Section 1981 cases). Thus, the continuing violation doctrine does not save this claim.

In addition, Plaintiff's accrual arguments simply cannot be taken seriously. He himself believed his claim accrued at least as of September 7, 2016, when he filed his first Section 1981 claim against SA Vicencia in the California action, raising the same allegations he makes here. Even using that date as the appropriate accrual date, Plaintiff had three years, until September 7, 2019, to file suit. He did not do so until September 20, 2019, almost two weeks too late.

In all events, Count Four is time-barred.

**III. The Section 1981 is barred by claim preclusion.**

Plaintiff's response regarding claim preclusion makes little sense. He argues that because underlying counsel successfully convinced his own counsel that a Section 1981 claim lacked merit, he should not be penalized for abandoning that claim in the prior lawsuit. Opp., at 12. But that was a calculated risk he undertook, as he otherwise concedes. *See* Opp., at 13 n.42. Indeed, he later explains that because pursuing a Section 1981 claim could have undercut his chances at succeeding on his separately raised *Bivens* claim in the California action, he affirmatively chose to proceed with the latter (*id.*) – even though Rule 8(a)(3) of the Federal Rules of Civil Procedure permits alternative pleading. Now that he lost that *Bivens* claim on the merits in the prior action, Plaintiff

wants to re-test his related Section 1981 claim in this action. That is precisely what claim preclusion prohibits. *See Apotex, Inc. v. FDA*, 393 F.3d 210, 217-18 (D.C. Cir. 2004).[2]

Plaintiff emphasizes that his prior Section 1981 claim was never adjudicated on the merits. Opp., at 12. That doesn't matter. As SA Vicencia explained in his motion to dismiss, Motion, at 10-11, while issue preclusion "prevents the relitigation of any issue that was raised *and decided* in the prior action," *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (emphasis added); claim preclusion "forecloses all that which *might have been litigated previously*." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (emphasis added). In that way, claim preclusion helps "conserve judicial recourses, avoid inconsistent results, engender respect for judgments of predictable certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Here, Plaintiff previously adjudicated on the merits a related claim arising out of the same nucleus of facts in a court of competent jurisdiction. Claim preclusion plainly applies. *See Cal. Cmtys. Against Toxics v. EPA*, 928 F.3d 1041, 1051 (D.C. Cir. 2019).

Finally, Plaintiff argues that because the D.C. Circuit has since stated in dicta that Section 1981 might apply to federal officials – though it declined to definitively resolve that issue – claim preclusion does not apply. Opp., at 12-13. However, even if a mere suggestion in dicta could constitute a change in controlling law, it is well settled that a "[c]hange in the controlling principles of law ordinarily does not warrant denial of claim preclusion." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4415 (4th ed. 2019); *see also Federated Dep't Stores,*

[2] Plaintiff argues that SA Vicencia has asserted two positions fundamentally at odds with another: (1) a Section 1981 claim could not have been brought in the first action, as underlying counsel insisted at that time; and (2) Plaintiff's claim is barred by claim preclusion because it could have been brought in the first lawsuit. Opp., at 12. But SA Vicencia's position has remained the same across both lawsuits: any Section 1981 claim lacks merit. Plaintiff was not obligated to accept that position. He was free to litigate against it in the first lawsuit. What he cannot do (and what claim preclusion prevents) is him litigating a claim to judgment on the merits in the first action, and then initiating a successive related lawsuit after he loses the first time.

*Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Hardison*, 655 F.2d at 1288-89. That is because courts prefer finality to the endless relitigation of claims. Moreover, nothing prevented Plaintiff from pursuing his Section 1981 theory of liability in the first action. Instead, he strategically chose to pursue a different theory and lost on the merits. He does not get a second bite at the apple.

## IV. Section 1981 does not provide a damages remedy against federal actors and does not remedy national origin discrimination.

Plaintiff has not cited a single case applying Section 1981 to federal actors sued in their individual capacities. In fact, as Plaintiff concedes, the wealth of case law has consistently refused to apply Section 1981 to federal actors at all. Opp., at 13. Plaintiff attempts to distinguish those cases because they dealt mostly with "official-capacity" claims. *Id.* But that misses the point. Those courts all refused to apply Section 1981 to federal actors because the statute itself expressly limits its reach to "impairment by nongovernmental discrimination and impairment *under color of State law*." 42 U.S.C. § 1981(c) (emphasis added). That limitation precludes Section 1981 liability against all federal actors sued for conduct under color of federal law, regardless of whether those actors are sued in their individual or official capacities. And while the D.C. Circuit has suggested in dicta that it would be "anomalous" if Section 1981 did not apply to federal actors given Subsection (a)'s generic reference to "every State *and Territory*," *see Xia*, 865 F.3d at 658-59 (emphasis added); to date, no court has adopted that dicta. Nor is that dicta even persuasive. Indeed, the D.C. Circuit panel in *Xia* never explains how the more generic reference to "every State and Territory" in Subsection (a) overrides the more recent and specific language in Subsection (c), which expressly limits the statute's reach to "nongovernmental discrimination and impairment *under color of State law*." 42 U.S.C. § 1981(c) (emphasis added). In short, *Xia* did not definitively resolve this issue, and this Court should not adopt its flawed dicta.

Even if Section 1981 did apply to conduct under color of federal law, the statute itself contains no express remedial provision. Under an old approach where the Supreme Court would readily imply a statutory damages action even with no express remedial provision, the Court held that Section 1981 contains an implied damages remedy against *private* actors. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459-60 (1975). However, it subsequently recognized that *Johnson* does not control the question of whether Section 1981 implies a similar damages action against *governmental* actors, holding that no such implied remedy existed against state actors given the availability of damages under 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989). The Supreme Court has yet to address whether a similar implied remedy exists against federal actors. But much has changed in the landscape of implying statutory damages remedies. Now, absent compelling and unusual circumstances, the Supreme Court has held that courts have *no authority* to imply a statutory damages remedy absent explicit statutory language creating not just a private cause of action but also a private remedy. *Alexander v. Sandoval,* 532 U.S. 275, 286-87 (2001); *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1078 (D.C. Cir. 2012); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002). Plaintiff's only response to all of this is that the D.C. Circuit already recognizes a damages remedy under Section 1981, citing *Barbour v. Merrill*, 48 F.3d 1270 (D.C. Cir. 1995). But that case involved a private actor, not a governmental one, let alone a federal actor. Again, Plaintiff has not cited a single case holding that Section 1981 creates a damages action against federal actors.

Finally, even if Section 1981 created a damages remedy against federal actors, it does not remedy discrimination based on national origin. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Although Plaintiff had previously alleged in the California action that SA Vicencia discriminated against him on the basis of race *and* national origin, he omitted the word race in the

complaint here. *Compare* Orig. Compl. and First Am. Compl., *Al Seraji v. Neffenger*, No. 8:16-cv-1637 (C.D. Cal.) (ECF 6 ¶ 87 and ECF 22 ¶ 155) (both alleging discrimination "based on his race and national origin") *with* Compl. ¶ 285 (alleging discrimination "based on Plaintiff's national origin"). Recognizing the error, Plaintiff wants this Court to read the word "race" into his complaint, arguing that the complaint at least *implies* allegations of discrimination against the Arab race more generally. Opp., at 15. Of course, the word Arab also does not appear in the complaint, and this Court should reject Plaintiff's attempt to amend his complaint through an opposition brief. *See Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*, 297 F. Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

**V. SA Vicencia is entitled to qualified immunity on the Section 1981 claim.**

As previously explained, Plaintiff has yet to cite a single case holding that Section 1981 allows for a damages action against federal actors sued in their individual capacities. That should end the qualified-immunity inquiry because absent such case law there could be no clearly established right. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (requiring some precedent suggesting that officer acting under similar circumstances violated the law to overcome a qualified immunity defense). Plaintiff argues that no such precedent is required because SA Vicencia should have known that he could not discriminate on the basis of race. Opp., at 19. That misstates the law on qualified immunity. The question is whether Plaintiff had a clearly established right under Section 1981 to make and enforce contracts against impairment under color of *federal* law. As far as SA Vicencia is aware, every court has said no, with one D.C. Circuit opinion (post-

dating the alleged conduct here) suggesting otherwise in dicta. Under no test could that so-called "right" be deemed clearly established.[3]

Moreover, Plaintiff fails to plausibly allege discrimination, in any event. Invidious-discrimination claims require specific and plausible allegations that the alleged conduct was caused by an intent to discriminate, here based on race (assuming it were pled) and national origin. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The mere fact that a defendant's actions had an adverse effect upon someone from an identifiable group is constitutionally insufficient. *Id.* at 676-77. Plaintiff alleges that SA Vicencia (1) showed up at his initial TWIC interview despite the presence of an FBI agent being atypical; (2) showed up at Plaintiff's home; (3) informed Plaintiff his attorney was not a good one; (4) indicated he could help Plaintiff obtain a TWIC; (5) made false statements about Plaintiff's intentions and associations; and (6) influenced the denial of Plaintiff's TWIC application after Plaintiff refused to serve as an informant. Opp., at 20. And somehow, all of this means that SA Vicencia acted solely out of prejudice against the Arab race generally. *Id.* "In order to pursue a cause of action under § 1981, plaintiff cannot merely invoke race [or ethnicity] in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that his race [or ethnicity] was the reason for defendant's actions." *SS & T, LLC v. Am. Univ.*, No. 19-721, 2020 U.S. Dist. LEXIS 42107, *9-10 (D.D.C. Mar. 11, 2020) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990), *aff'd sub nom. Bray v. Hebble,* 976 F.2d 45 (D.C. Cir. 1992)). Plaintiff alleges no such facts here.

[3] To the extent Plaintiff is attempting to ground this so-called right on the due process clause, *see* Opp., at 20 (citing *Trifax Corp. v. Dist. of Columbia*, 53 F. Supp.2d 20, 27 (D.D.C. 1999)); the district court in the prior California action already held that no such clearly established due process right exists. *See* Order, *Al Seraji*, No. 16-1637 (C.D. Cal.) (ECF 52, at 10) ("The parties have not cited, and the Court could not find, a due process claim premised on similar alleged conduct."). Thus, not only is Plaintiff issue-precluded from rearguing otherwise, but that prior ruling is fatal to any qualified immunity argument he *could* make here. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (where judges disagree on constitutional question, qualified immunity is "deserve[d]"); *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

Plaintiff contends otherwise, specifically noting that SA Vicencia asked about known terrorist associations, accused Plaintiff of going overseas to join a terrorist organization, and asked if he would be willing to inform on others at his mosque. Opp., at 18. But none of this plausibly suggests discrimination against Arabs generally or specifically. Moreover, in evaluating a complaint's allegations, the Court is free to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, there is an "obvious alternative explanation" for this line of inquiry. Indeed, it should come to no surprise that one might ask a TWIC applicant about known terrorist associations given that the whole point of the TWIC application process is to determine whether "[the] individual . . . otherwise poses a terrorism security risk to the United States." 46 U.S.C. § 70105(c)(1)(D)(iv). It is also unsurprising that one might ask *this* TWIC applicant these very questions given that a known terrorist, Mohamed Badawi, who had been recently arrested on terrorism-related charges, attended Plaintiff's mosque, and was an admitted acquaintance, mentioned Plaintiff's name in text messages and to the FBI. Compl. ¶¶ 63, 69, 163. "As between that 'obvious alternative explanation' . . . and the purposeful, invidious discrimination respondent asks [this Court] to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. This is all bolstered by the fact that Plaintiff never disputes that SA Vicencia only relayed entirely truthful information about him, including potentially exculpatory information that could have entitled him to a TWIC. Once that truthful information was relayed, it was completely out of SA Vicencia's hands whether or not Plaintiff was allegedly placed on a so-called "watchlist" and what affect that may or may not have had on his TWIC application. Plaintiff never pretends otherwise. But what remains clear is that Plaintiff fails to allege any facts plausibly showing that SA Vicencia took any action based solely on Plaintiff's race or national origin.

Having failed to sufficiently allege a Section 1981 violation, let alone a clearly established one, SA Vicencia is entitled to qualified immunity under both prongs of the analysis.

**VI. Amendment would be futile.**

Plaintiff requests leave to amend in the event that this Court finds that (1) it lacks personal jurisdiction over SA Vicencia or (2) the complaint does not contain sufficient allegations of race discrimination. Opp., at 21. Plaintiff thus concedes that if this Court grants the motion to dismiss on any other basis – untimeliness, claim preclusion, or because Section 1981 does not create a private cause of action for damages against federal actors – he is not seeking amendment. With respect to the two bases for which Plaintiff does seek amendment, this Court should deny the request as futile. First, no additional factual allegations will change the state of the *law*, specifically that the pendent personal jurisdiction doctrine does not apply to add defendants where jurisdiction does not otherwise lie. Second, no additional factual allegations will change the legal landscape under which SA Vicencia was operating – he had a statutory basis to inquire on the very topics that apparently offended Plaintiff and this line of inquiry was based on information received from a known terrorist. These obvious alternative explanations completely undercut any allegations of discrimination. Finally, adding the California action to the tally, this is now Plaintiff's *fourth* complaint against SA Vicencia. After four years of litigation, he still has not adequately pleaded a claim of discrimination. It is time to end this matter.

**CONCLUSION**

For all these reasons, this Court should dismiss the Section 1981 claim (Count Four) against SA Vicencia in his individual capacity with prejudice, and end this *second* case against him.

Respectfully submitted this 18th day of March 2020.

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch
Civil Division

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Senior Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendant Vicencia