**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMED AL SERAJI, )<br><br>Plaintiff, )<br><br>v. )<br><br>CHAD F. WOLF, in his official capacity as )<br>Acting Secretary of the Department of )<br>Homeland Security, et al.,[1] )<br><br>Defendants. ) | Civil Action No. 19-2839 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Mohamed Al Seraji, brings this civil action against the defendants—Chad

F. Wolf, in his official capacity as Acting Secretary of the Department of Homeland Security

(the "Department"); William Barr, in his official capacity as Attorney General; David Pekoske,

in his official capacity as Administrator of the Transportation Security Administration ("TSA");

Christopher Wray, in his official capacity as Director of the Federal Bureau of Investigation

("FBI"); and Charles Kable, in his official capacity as Director of the Terrorist Screening Center

("TSC") (collectively, the "official capacity defendants")—pursuant to the Fifth Amendment to

the United States Constitution, U.S. Const. amend. V; the Administrative Procedure Act

("APA"), 5 U.S.C. § 702; and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  See

Plaintiff's Original Complaint for Damages, Declaratory Relief, and Injunctive Relief

("Compl.") ¶¶ 1, 5–10, 12.  The plaintiff brings an additional claim against FBI Special Agent

Nicholas Vicencia, in his individual capacity, alleging violation of Section 1981 of the Civil

---

[1] Chad F. Wolf is substituted for Kevin McAleenan as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

Rights Act of 1866. <u>Id.</u> ¶ 33. Currently pending before the Court are the Official Capacity Defendants' Motion to Dismiss ("Defs.' Mot."), seeking dismissal of the plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), <u>see</u> Defs.' Mot. at 1, and Defendant Nicholas Vicencia's Motion to Dismiss ("Vicencia's Mot."), seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), <u>see</u> Vicencia's Mot. at 1. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and deny as moot in part the official capacity defendants' motion to dismiss and grant in part and deny as moot in part Vicencia's motion to dismiss.

## I.   BACKGROUND

In September 2015, the plaintiff, a naturalized United States citizen of Yemeni national origin, completed a professional tractor trailer driving training course and obtained a Commercial Driver's License ("CDL") issued by the state of California. Compl. ¶¶ 14, 21–22. After the plaintiff obtained his CDL, a shipping company offered him a position as a truck driver, conditioned on the requirement that he acquire a Transportation Worker Identification Credential ("TWIC")[3] card from the TSA. <u>See</u> <u>id.</u> ¶¶ 23–24. In October 2015, the plaintiff sent a TWIC card application to the TSA. <u>Id.</u> ¶ 25. During the processing of the TWIC card application, the plaintiff received a voicemail on October 30, 2015, from Wesley Williams, a

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of the Official Capacity Defendants' Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Response in Opposition to the Official Capacity Defendants' Motion to Dismiss ("Pl.'s 1st Resp."); (3) the Plaintiff's Brief in Support of his Response in Opposition to the Official Capacity Defendants' Motion to Dismiss ("Pl.'s 1st Opp'n"); (4) the Reply Memorandum in Support of the Official Capacity Defendants' Motion to Dismiss ("Defs.' Reply"); (5) the Memorandum of Points and Authorities in Support of Defendant Vicencia's Motion to Dismiss ("Vicencia's Mem."); (6) the Plaintiff's Response in Opposition to Defendant Nicholas Vicencia's Motion to Dismiss ("Pl.'s 2d Resp.") (7) the Memorandum of Points and Authorities in Support of Plaintiff's Response in Opposition to Defendant Nicholas Vicencia's Motion to Dismiss ("Pl.'s 2d Opp'n"); and (8) the Reply Memorandum in Support of Defendant Nicholas Vicencia's Motion to Dismiss ("Vicencia's Reply").

[3] A TWIC card is a biometric transportation security card that allows an individual to enter "an area . . . designated as a secure area by the Secretary [of Commerce.]" 46 U.S.C. § 70105(a)(1).

TSA representative, "informing [the plaintiff] that he needed to come in for an interview."  Id.
¶ 26.  When the plaintiff responded for the meeting with Williams, Vicencia was also present and
asked the plaintiff questions about his background.  Id. ¶¶ 31, 33–34, 36.  At the conclusion of
the meeting, Vicencia informed the plaintiff "that he should expect a decision with regard to his
TWIC card soon."  Id. ¶ 43.  On December 8, 2015, the TSA sent the plaintiff an Initial
Determination of Threat Assessment ("Initial Determination"), see id. ¶ 46, an official letter
stating that the plaintiff "was denied [a] TWIC [card] because the TSA [had] decided that he was
a security threat under 49 C.F.R. § 1572.107(a)[,]" id. ¶ 48.  The plaintiff was, therefore, unable
to accept his contingent job offer with the shipping company.  Id. ¶ 47.

On February 3, 2016, the plaintiff began the TSA's administrative process to appeal the
initial denial of his TWIC card, and he requested all documentation from the TSA that was used
in making the determination that he was a security threat.  See id. ¶¶ 133–34.  The TSA
responded to the plaintiff's appeal in a letter dated March 10, 2016, and provided him with "a
five-page document, with heavy redactions, containing no useful substantive information or any
explanation as to why it considered [the p]laintiff to be a security threat."  Id. ¶¶ 136–37.  The
plaintiff appealed the TSA's decision to deny him a TWIC card for a second time on March 24,
2016.  Id. ¶ 139.  The TSA responded on April 14, 2016, and again it "did not substantively
respond to [the p]laintiff's second appeal [ ], and did not address the question of why it
considered [the p]laintiff to be a security threat."  Id. ¶¶ 141–42.  In the same letter, the TSA
informed the plaintiff that he had sixty days to "'serve upon [the] TSA an additional written
reply to the Initial Notification of Threat Assessment.'"  Id. ¶ 143 (alteration in original).  In a
letter dated April 20, 2016, the plaintiff replied to the TSA's April 14, 2016 letter, stating that he
had already appealed the Initial Determination twice.  Id. ¶ 144.

On November 17, 2016, the plaintiff received a Final Determination of Threat

Assessment ("Final Determination") from the TSA.  Id. ¶ 146.[4]  Thereafter, on May 17, 2017,

the TSA permitted the "[p]laintiff to re-urge his administrative appeal" for the TWIC card.  Id. ¶

147.  The plaintiff therefore re-urged his administrative appeal on May 24, 2017.  Id. ¶ 148.  The

plaintiff received a Final Determination from the TSA regarding the denial of his TWIC card

application and appeal on December 14, 2017.  See id. ¶ 149.  On December 21, 2017, the

plaintiff simultaneously appealed the Final Determination pursuant to 49 C.F.R. § 1515.11(b)

and requested a review by an Administrative Law Judge ("ALJ").  Id. ¶¶ 150–51.  However, on

May 25, 2018, while the appeal to the ALJ was pending, the TSA withdrew the Final

Determination, and informed the plaintiff that he was now "eligible to hold a TWIC" card.  Id.

¶ 184.  The plaintiff received his TWIC card on June 14, 2018.  Id. ¶ 185.

The plaintiff filed his Complaint in this case on September 20, 2019.  See generally id.

On December 20, 2019, the official capacity defendants filed their motion to dismiss, see

generally Defs.' Mot., and thereafter Vicencia filed his motion to dismiss, see generally

Vicencia's Mot.  These motions are the subjects of this Memorandum Opinion.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins.

Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal

Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'"

Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v.

---

[4] The Final Determination "includes a statement that the Assistant Administrator has reviewed the Initial
Determination, the applicant's reply and any accompanying information, and any other materials or information
available to him or her, and has determined that the applicant poses a security threat warranting denial of the
security threat assessment for which the applicant has applied."  49 C.F.R. § 1515.5(c)(2).

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).

B.     **Motion to Dismiss for Lack of Personal Jurisdiction**

When a defendant moves to dismiss a case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual

basis for the court's exercise of personal jurisdiction over the defendant.  See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); see also First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988) ("[A] plaintiff must make a prima facie showing of the pertinent jurisdictional facts." (citations omitted)).  Conclusory statements do not satisfy this burden.  See GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (citing First Chi. Int'l, 836 F.2d at 1378–79).  Instead, there must be specific allegations connecting the defendant to the forum.  See, e.g., Second Amendment Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).  Because the Court is permitted to "consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction," Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)), those allegations may be "bolstered by . . . affidavits and other written materials as [the plaintiff] can otherwise obtain," Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005).  And, although the court need not accept the plaintiff's allegations bearing upon personal jurisdiction as true, see Associated Producers, Ltd. v. Vanderbilt Univ., 76 F. Supp. 3d 154, 161 (D.D.C. 2014), "factual discrepancies appearing in the record must be resolved in favor of the plaintiff," Crane, 894 F.2d at 456 (citation omitted).

## C.    Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint." Hettinga, 677 F.3d at 476.  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Empl't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

**A.    The Official Capacity Defendants' Motion to Dismiss**

The plaintiff alleges that the official capacity defendants (1) "violated [his] right to procedural due process of law," Compl. ¶ 241; (2) "deprived [him] of his protected liberty interests, without adequate substantive due process," id. ¶ 256; and (3) "violated the [APA] because [their] regulations and conclusions are arbitrary, capricious, an abuse of discretion, and not in accordance with the law," id. ¶ 258.

The official capacity defendants argue that the "Court lacks Article III jurisdiction over [the] plaintiff's claims." Defs.' Mem. at 9 (capitalization removed).[5] "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (citing U.S. Const. art. III, § 2). "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed justiciability doctrines, among which are standing[,] ripeness, mootness, and the political question doctrine." Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks omitted).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560–61 (second alteration in original) (citations and internal quotation marks omitted).

"An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List, 573 U.S. at 158 (internal quotation marks omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) ("[The p]laintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure

---

[5] The official capacity defendants also argue that (1) "[t]he Court lacks jurisdiction over [the p]laintiff's claims" because "jurisdiction over his claims would still be vested exclusively in the courts of appeals pursuant to [49 U.S.C. §] 46110," Defs.' Mem. at 14; and (2) the plaintiff "fail[s] to state any claim upon which relief can be granted," id. at 20. However, because the Court finds that the plaintiff lacks standing, the Court need not address the merits of the official capacity defendants' additional arguments. See Am. Freedom Law Ctr. v. Obama, 106 F. Supp. 3d 104, 108 (D.D.C. 2015) (noting that "the Court 'need not delve into [a plaintiff's] myriad constitutional and statutory claims [where] the [plaintiff] lacks Article III standing'[, Crow Creek Sioux Tribe v. Brownlee, 331 F.3d 912, 915 (D.C. Cir. 2003),] . . . because a court may not 'resolve contested questions of law when its jurisdiction is in doubt[, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)]").

that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."); Nat. Res. Def. Council v. Pena, 147 F.3d 1012, 1022 (D.C. Cir. 1998) ("[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury."); In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig., 266 F. Supp. 3d 1, 30 (D.D.C. 2017) (stating that "a harm that is 'remote, speculative, conjectural, or hypothetical' will not suffice" for establishing an injury in fact (citing Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin., 489 F.3d 1279, 1293 (D.C. Cir. 2007))).

Here, the plaintiff has failed to establish that he has suffered an injury in fact.  The plaintiff claims that he has "properly demonstrate[d] standing . . . due to both lost earnings and future exposure to [the official capacity d]efendants' policies." Pl.'s Mem. at 17 (capitalization removed).  As an initial matter, the Court notes that "[s]overeign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government," Clark v. Libr. of Cong., 750 F.2d 89, 103 (D.C. Cir. 1984), and because "Congress has not waived the federal government's immunity from suit for claims seeking monetary damages under either the APA or the Constitution," the plaintiff is limited to seeking only declaratory or injunctive relief in this case, Fletcher v. U.S. Dep't of Justice, 17 F. Supp. 3d 89, 93 (D.D.C. 2014); see also Ross v. United States, 460 F. Supp. 2d 139, 149–50 (D.D.C. 2006) (stating that "the law is well-established that the APA's waiver of sovereign immunity does not apply to suits for monetary damages" (citations and internal quotation marks omitted)).  Therefore, the plaintiff cannot rely on past injuries, see Pl.'s 1st Opp'n at 18,[6] but rather must

---

[6] The plaintiff alleges that (1) he "suffered damages as a result of these violations by [the official capacity] [d]efendants, including but not limited to lost wages," Compl. ¶ 273; (2) "he lost income and opportunities during the interim time of over two years in which he fought the original denial," id. ¶ 187; (3) the official capacity

(continued . . .)

allege that "he [is] likely to suffer future injury," <u>Lyons</u>, 461 U.S. at 105 (finding that the plaintiff lacked standing because he did not "establish a real and immediate threat that he would again be stopped for a traffic violation . . . by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part"); <u>see also</u> <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); <u>Dearth v. Holder</u>, 641 F.3d 499, 501 (D.C. Cir. 2011) ("In a case of this sort, where the plaintiff[ ] seek[s] declaratory and injunctive relief, . . . past injuries alone are insufficient to establish standing."); <u>Fair Emp't Council, Inc. v. BMC Mktg. Corp.</u>, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (stating that in order to establish standing when seeking injunctive relief, a plaintiff "must allege a likelihood of future violations of [his] rights . . . , not simply future effects from past violations"), which he has failed to sufficiently do.

The plaintiff claims that because he "intends to renew his TWIC card upon expiration" and "any future TWIC card denial without the ability to properly confront the evidence against

---

(. . . continued)

"[d]efendants' actions . . . damaged [the p]laintiff's reputation and precluded him from practicing his chosen profession for over two and a half years," <u>id.</u> ¶ 240; (4) the official capacity "[d]efendants' adverse actions directly foreclosed [the p]laintiff[']s[] freedom to take advantage of chosen employment opportunities," <u>id.</u> ¶ 210; and, (5) the official capacity "[d]efendants affected [the plaintiff's] standing in the community," <u>id.</u> ¶ 212. He claims that these allegations are examples of "continuing, present adverse effects due to the policies and actions of the [o]fficial [c]apacity [d]efendants." Pl.'s 1st Opp'n at 18. However, as alleged, each of these injuries have already been incurred, and the plaintiff fails to explain how these injuries have "continuing, present adverse effects." <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495–96 (1974). And, although the parties do not address whether these alleged injuries are redressable, <u>see</u> <u>Athens Cmty. Hosp., Inc. v. Schweiker</u>, 686 F.2d 989, 992 (D.C. Cir. 1982) ("It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue sua sponte."); <u>Poblete v. U.S. Marshals Serv.</u>, 207 F. Supp. 3d 1, 2–3 (D.D.C. 2016) ("[A] district court may dismiss a complaint sua sponte . . . when it is evident that the court lacks subject matter jurisdiction."), the Court notes that even assuming that these alleged injuries sufficiently established that the plaintiff suffered an injury in fact, such injuries would not likely be redressed by the plaintiff's request for declaratory or injunctive relief. <u>See</u> <u>Fla. Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (stating that a plaintiff's injury is redressable when "the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury" that is being alleged); <u>see also</u> <u>Foretich v. United States</u>, 351 F.3d 1198, 1212 (D.C. Cir. 2003) ("[W]here reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible[,] and the injury cannot satisfy the requirements of Article III." (citation omitted)).

him in the existing regulatory scheme would once again deny [the p]laintiff constitutionally guaranteed due process," Compl. ¶ 193, he "will continue to be exposed to the [o]fficial [c]apacity [d]efendants' policies and actions in the future," Pl.'s 1st Opp'n at 19.  However, this allegation is also insufficient to establish that the plaintiff has standing because this alleged harm is "speculative" and "remote[.]"  In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig., 266 F. Supp. 3d at 30.  As the official capacity defendants correctly note, the plaintiff's "mere submission of such an application [three years from now] cannot constitute a justiciable injury for the straightforward reason that it may well be granted."  Defs.' Reply at 4; see also New England Power Generators Ass'n, Inc. v. Fed. Energy Regul. Comm'n, 707 F.3d 364, 369 (D.C. Cir. 2013) (holding that the plaintiff did not have standing because "[i]n essence, [the plaintiff's] challenge to the [agency's] orders is predicated not on any injury legitimately traceable to the order[s], but on the potential for [the agency] to issue future, contrary orders" and the fact "[t]hat [the agency] may one day attempt to alter its position is insufficient injury to [the plaintiff] now").  The denial of the plaintiff's TWIC card renewal application "that might take place years from now is not 'actual or imminent.'"  Nevada v. Nuclear Regul. Comm'n, 199 F. App'x 1, 2 (D.C. Cir. 2006); see also Algignis, Inc. v. Fed. Energy Regul. Comm'n, No. 19-1169, 2019 WL 8012936, at *1 (D.C. Cir. Dec. 9, 2019) ("[The plaintiff] also argues that it is at risk of losing priority for related license applications that it might file several years from now, but this alleged injury is neither 'actual' nor 'imminent.'").  The plaintiff therefore does not allege a sufficient likelihood of future harm—i.e., that he is under a real and immediate threat of being denied a renewal TWIC card.  Accordingly, he lacks standing, and the Court must grant the official capacity defendants' motion to dismiss for lack of subject matter jurisdiction.

**B.**     **Special Agent Vicencia's Motion to Dismiss**

Vicencia argues that the "Court lacks personal jurisdiction over" him.  Vicencia's Mem.

at 6.[7]  The Court agrees.

When evaluating whether it has personal jurisdiction over a non-resident defendant, the

Court must first "determine whether jurisdiction over a party is proper under the applicable long-

arm statute and," only if the conduct in question falls under at least one of the criteria set out in

the long-arm statute, determine "whether [exercising jurisdiction over the party] accords with the

demands of due process."  United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995).

Therefore, the plaintiff must first "establish[ ] the [C]ourt's personal jurisdiction over the

defendant" under at least one provision of the District of Columbia's long-arm statute, Day v.

Cornèr Bank (Overseas) Ltd., 789 F. Supp. 2d 150, 155 (D.D.C. 2011), which, in pertinent part,

states:

> (a) A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the
> person's—
> (1) transacting any business in the District of Columbia; . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the
> District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia if he regularly does or solicits business, engages
> in any other persistent course of conduct, or derives substantial revenue from
> goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423.

---

[7] Vicencia also argues that (1) the plaintiff's "Section 1981 claim is time-barred," (2) the plaintiff is precluded from
bringing the Section 1981 claim against him because the plaintiff "pursued related claims . . . to final judgment in
the prior California action," (3) "Section 1981 does not provide a damages remedy against federal actors[ ] and does
not remedy discrimination alleging national origin animus," and (4) he "is entitled to qualified immunity."
Vicencia's Mem. at 2.  However, because the Court concludes that it lacks personal jurisdiction over Vicencia, it
cannot address the merits of these additional arguments.  See Shatsky v. Palestine Liberation Org., 955 F.3d 1016,
1028 (D.C. Cir. 2020) (noting that the "question of personal jurisdiction must be resolved before reaching the
merits" (internal quotation marks omitted)).

The "[p]laintiff does not dispute that [Vicencia] is a resident of California and that the [ ] events [described in the Complaint] took place in California."  Pl.'s 2d Opp'n at 6–7.  Therefore, the plaintiff cannot establish this Court's personal jurisdiction over Vicencia under any of the provisions of the District of Columbia's long-arm statute.  However, the plaintiff nevertheless claims that "[t]his matter is [ ] properly before this Court under the principle of pendent personal jurisdiction."  Id. at 7.  Under the doctrine of "pendent personal jurisdiction," a court may assert personal jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  Geier v. Conway, Homer & Chin-Caplan, P.C., 983 F. Supp. 2d 22, 31 (D.D.C. 2013) (citing Oetiker v. Jurid Werke GmbH, 556 F.2d 1, 5 (D.C. Cir. 1977)).  According to the plaintiff, the "Court is able to exercise its discretion to find that pendant personal jurisdiction can be properly asserted over [ ] Vicencia" because "Vicencia is not the lone defendant named in [the p]laintiff's Complaint" and "[t]hough the causes of action differ between the various [d]efendants, the claims presented all arise out of a common nucleus of operative facts."  Pl.'s 2d Opp'n at 8.  However, as Vicencia correctly notes, the doctrine of pendent personal jurisdiction "is limited to situations where the court has personal jurisdiction over one claim against the defendant, and then exercises personal jurisdiction over any remaining claims against the same defendant," and "[i]t is not a vehicle for asserting personal jurisdiction over additional parties where no such jurisdiction would otherwise lie."  Vicencia's Mem. at 8 n.2; see also Oetiker, 556 F.2d at 5 (concluding that because "[35 U.S.C. §] 293 enabled [the] plaintiff to obtain personal jurisdiction over the foreign defendant with respect to his claims of patent invalidity and noninfringement[,] . . . this enabled [the] plaintiff to obtain personal jurisdiction over the [same]

defendant with respect to any of his claims that arose out of the same core of operative fact as those claims which clearly fell within the scope of [Section] 293"); Geier, 983 F. Supp. 2d at 31 ("The [plaintiffs] assert that this Court has personal jurisdiction over the [defendants] with regard to at least one of the claims presented in this suit.  They ask the Court to recognize pendent personal jurisdiction with regard to all of the other claims.").  Accordingly, the doctrine of pendent personal jurisdiction is inapplicable here, as the plaintiff has only brought one claim against Vicencia, and this Court lacks personal jurisdiction over Vicencia as to this claim. Therefore, because Vicencia's conduct does not bring him within any provision of the District of Columbia long-arm statute and because the doctrine of pendent personal jurisdiction does not apply, the Court cannot exercise personal jurisdiction over Vicencia.  Accordingly, the Court must grant Vicencia's motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction with respect to the plaintiff's claims against the official capacity defendants and lacks personal jurisdiction over Vicencia.[8]  Therefore, the Court must grant in part and deny as moot in part the official capacity defendants' motion to dismiss as well as Vicencia's motion to dismiss.[9]

---

[8] In Count V of the Complaint, the plaintiff requests that the "Court grant [to the plaintiff] EAJA costs and fees as provided for by statute."  Compl. ¶ 289.  However, because the Court lacks subject matter jurisdiction over the official capacity defendants and lacks personal jurisdiction over Vicencia, the Court is precluded from granting the plaintiff an award under the EAJA.  See Mancho v. Chertoff, 480 F. Supp. 2d 160, 161–62 (D.D.C. 2007) (concluding that "this Court cannot grant any attorney's fees in this case" because it "lacks jurisdiction over [the] petitioner's underlying request for relief"); Advanced Mgmt. Tech., Inc. v. Fed. Aviation Auth., 211 F.3d 633, 637 (D.C. Cir. 2000) (noting that the "EAJA allows recovery of costs for prevailing parties in 'judicial review of agency action[,]' but the party must first prevail in a 'court having jurisdiction of that action"); Roberts v. Napolitano, 792 F. Supp. 2d 67, 76 (D.D.C. 2011) (noting that "to warrant an award of attorney's fees, a party must first prevail in its litigation").

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

**SO ORDERED** this 22nd day of December, 2020.

REGGIE B. WALTON
United States District Judge